

U.S BANKRUPTCY COUERT
NORTHERN DISTRICT OF TEXAS

# ENTERED

TAWANA C. MARSHAL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed November 9, 2015**

*Mark X. Mullin*
_____
**United States Bankruptcy Judge**

_____


IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| EARL WESTLEY KING | § § | CASE NO. 14-42820-MXM |
| DEBTOR. | § § § | CHAPTER 7 |

| | | |
|---|---|---|
| RUSSELL JOHNSON, | § § § | |
| PLAINTIFF, | § § | |
| v. | § § | ADVERSARY NO. 14—04104-MXM |
| EARL WESTLEY KING, | § § § | |
| DEFENDANT. | § | |

## MEMORANDUM OPINION

Page 1 of 18

On September 29, 2015, the Court held a trial on Plaintiff Russell Johnson's complaint to declare Defendant Earl Westley King's debt to him nondischargeable under 11 U.S.C. § 523(a)(4) and (a)(6).  Because Plaintiff did not prove certain nondischargeability elements by a preponderance of the evidence, the Court will enter a separate judgment for Defendant.

## I.    Background

In January 2007, Plaintiff and Defendant formed Earl's Deli, LLC, a Texas limited liability company (the "LLC"), to operate a deli sandwich shop in Tarrant County, Texas by the name of Earl's Deli.  Defendant had years of sandwich-shop experience from his prior ownership of seven Subway stores in Colorado.  Plaintiff, on the other hand, did not have any prior sandwich-shop experience, as Plaintiff ran a trucking company for twenty-six years prior to opening Earl's Deli with Defendant.  Plaintiff first met Defendant in or about 1990 as a customer in one of Defendant's Subway stores.

To form the LLC and open Earl's Deli, Plaintiff and Defendant contributed capital to the LLC and they both guaranteed the LLC's Wells Fargo line of credit and a Wells Fargo credit card issued to the LLC.

Plaintiff's wholly-owned corporation, RWJ Enterprises, Inc., leased the restaurant space to the LLC under a five-year written lease that called for monthly rent of $1,200, but the parties verbally agreed to reduce the LLC's monthly rent to $1,000.  Further, the LLC paid the $1,000 monthly rent to RWJ for only six months after Earl's Deli opened, but paid no rent thereafter.

The LLC's Certificate of Formation provides that the LLC shall be managed by its members. Pl.'s Ex. 1, art. VI.  The Company Agreement for the LLC, signed by both parties, likewise provides that management of the LLC is reserved to the members in proportion to their respective "Percentage Interests," or the ratio in which the members share profits and losses,

which were 51% for Plaintiff and 49% for Defendant.  Pl.'s Ex. 2, ¶¶ 1.01, 3.01, 6.01, and Ex. A to the Company Agreement.

The parties did not, however, manage the LLC in proportion to their nearly equal Percentage Interests.  Instead, beginning when Earl's Deli opened its doors in May 2007 until sometime in late December 2008 or early January 2009, Defendant managed the day-to-day operations and finances of the LLC, while Plaintiff chose to be a "silent partner."  At Plaintiff's insistence, however, Defendant used QuickBooks software to record and maintain the company's finances.  Defendant had little, if any, prior experience using QuickBooks software.  Plaintiff, at all relevant times, had access to the QuickBooks software and to the LLC's other books and records.

In December 2008, Defendant informed Plaintiff that the LLC was out of money and the LLC would have to close Earl's Deli.  Plaintiff did not want to close Earl's Deli, however, so he took over the day-to-day operations and finances of the LLC in late December 2008 or early January 2009.  It was only then, according to Plaintiff, when he began reviewing the LLC's QuickBooks and other books and records, that he discovered the following alleged misdeeds of Defendant:

- Shortly after opening Earl's Deli, Plaintiff and Defendant agreed to replace the Wells Fargo line of credit with a lower-interest bearing loan from Regions bank. After the parties paid off the Wells Fargo line of credit with the new Regions loan, however, Defendant failed to close the Wells Fargo line of credit and instead continued to use the Wells Fargo line of credit and Wells Fargo credit card, incurring additional LLC debt for which Plaintiff, as guarantor, was liable.

- Defendant used the LLC's Wells Fargo credit card to purchase $3,405.69 of gas for Defendant's personal car use.

- Defendant caused the LLC to make $2,000 in distributions to Defendant that were not authorized under the LLC agreement. Specifically, Plaintiff argues that under paragraph 5.02 of the Company Agreement, distributions of cash to members are allowable only after both members have approved such distributions and only if there is excess cash available after considering current and anticipated company needs.[1] Plaintiff asserts that the members never met to (i) approve any of the distributions Defendant made to himself, or (ii) make the required determinations that excess cash was available for such distributions. In addition, Plaintiff points out that Defendant made distributions only to himself and not to both Plaintiff and Defendant in accordance with their respective Percentage Interests.

- When the LLC paid off the Wells Fargo line of credit with the Regions loan proceeds, according to the LLC's general ledger, $25,000 was deposited from Regions bank on August 17, 2007, and $23,500 was withdrawn on August 20, 2007 to "Pay down Line of Credit" with Wells Fargo. Pl.'s Ex. 7. But the general ledger specifically identified only $15,374 owed to Wells Fargo as of the

---

[1] Paragraph 5.02(a) reads:

> From time to time (but at least once each calendar quarter) the Members shall determine in their reasonable business judgment to what extent (if any) the Company's cash on hand exceeds its current and anticipated needs, including, without limitation, for operating expenses, debt service, acquisitions, and a reasonable contingency reserve. If such an excess exists, the Members shall cause the Company to distribute to the Members, in accordance with their Percentage Interests, an amount in cash equal to that excess.

Pl.'s Ex. 2, Company Agreement ¶ 5.02(a).

      payoff date, thus leading to a discrepancy in the amount of $8,126 ($23,500 - $15,374) that Defendant has never been able to explain.

- Defendant made daily bank deposits from cash sales in even dollar amounts, which—according to Plaintiff—suggested that Defendant was not depositing all of the daily cash sales.

- Even though Plaintiff had no prior sandwich-shop experience, sales increased after Plaintiff took over operations of Earl's Deli, leading Plaintiff to suspect that Defendant had underreported sales and pocketed the difference.

Plaintiff managed Earl's Deli for three and a half years, from January 2009 through August 2012, without the need to use or obtain additional credit from Regions or Wells Fargo. While Plaintiff was managing Earl's Deli, the LLC made additional distributions to Defendant in the aggregate amount of $5,705 (which was greater than the initial $2,000 of distributions made while Defendant was manager). *See* Pl.'s Ex. 7, Earl's Deli, LLC General Ledger. When asked why Plaintiff allowed the LLC to make such additional distributions to Defendant after Plaintiff assumed the day-to-day operations of Earl's Deli, Plaintiff testified—questionably—that he wasn't going to "wrestle" Defendant, and he didn't know how he could have stopped Defendant from taking the distributions.

Earl's Deli finally closed in August 2012 when RWJ, controlled by Plaintiff, changed the locks and evicted the LLC for failure to pay its rent obligations for the previous four years. The parties stipulate that (i) Plaintiff sued Defendant in the 352nd Judicial District Court of Tarrant County, Texas (the "State Court"), (ii) the State Court case proceeded to a non-jury trial in January 2014, (iii) the State Court rendered a now-final judgment for Plaintiff in the amount of

$24,271.23, plus costs, and (iv) the State Court did not make any findings of fact or conclusions of law when entering its judgment.

Defendant filed a Chapter 7 petition on July 11, 2014 and has since received his discharge. On November 7, 2014, Plaintiff filed this adversary proceeding timely under 11 U.S.C. § 523(a)(4) and (a)(6).

In support of his claims, Plaintiff relies on (i) Defendant's alleged unauthorized gas purchases using the LLC's Wells Fargo credit card in the amount of $3,405.69, (ii) Defendant's alleged unauthorized draws in the amount of $7,705, (iii) Defendant's inability to account for the $8,126 discrepancy shown on the general ledger between the amount of funds withdrawn to pay off the Wells Fargo line of credit and the amount actually needed to pay off Wells Fargo, and (iv) the State Court judgment.

Plaintiff concedes he cannot prove that Defendant underreported sales during the time period Defendant managed and operated Earl's Deli, and Plaintiff does not rely on that allegation. In addition, although Plaintiff alleges in the Complaint that Defendant neglected the business, Plaintiff does not appear to rely on that allegation in support of his claims, and he offered no credible evidence to support that allegation. Finally, Plaintiff does not appear to rely on Defendant's continued use of the Wells Fargo line of credit after the Wells Fargo line of credit had been paid off with the Regions loan proceeds, except to the extent Defendant may have used proceeds from the Wells Fargo line of credit for Defendant's personal benefit through gas purchases or distributions.

At the September 29, 2015 trial, both Plaintiff and Defendant testified. Defendant testified, in relevant part, to the following:

- The LLC did not have a company car. Defendant made numerous daily trips in his personal car for the LLC's benefit, including trips to the farmer's market to purchase produce, to the bank to make deposits, to customers for deliveries, and to other stores to pick up other deli supplies.

- Before allowing distributions to himself, Defendant reviewed the LLC's current bills and bills coming due in the near future to determine whether there were sufficient funds to pay himself the distributions. Defendant did not believe that the distributions prevented the LLC from paying rent to RWJ. Defendant admitted that the distributions were to him only and not in accordance with the parties' relative Percentage Interests. Defendant needed the distributions to pay his personal living expenses for the times he was not working a second job.

- Defendant was not an employee of the LLC, but he was doing the work of an employee. The LLC would have had to pay an employee approximately $1,600 per month for the work Defendant was doing on behalf of the LLC.

- Until the State Court suit was filed, Plaintiff never complained about any of the gas purchases or distributions, and Defendant did not think he was doing anything wrong by purchasing gas with the Wells Fargo credit card or by causing the LLC to make the distributions. Further, Defendant recorded all such complained of gas purchases and distributions in the LLC's QuickBooks.

- Defendant, like Plaintiff, could not explain the potential $8,126 discrepancy reflected in the LLC's general ledger between the alleged Wells Fargo line of credit payoff amount and the Regions proceeds that were used to pay off the Wells Fargo line of credit. Defendant testified, however, that he did not take or

>    misappropriate the disputed $8,126.  Other than the gas purchases in the amount of $3,405.69 and the distributions in the amount of $7,705, Defendant received no other LLC funds.

- As a 49% owner of the LLC, Defendant wanted the business to succeed and had to do the work he was doing for the business to operate.

Defendant's testimony was credible, and Defendant's credibility was critical to the Court in rendering this opinion.

## II.     Jurisdiction and Venue

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334, 151, and 157 and the standing order of reference in this district.  This proceeding is core pursuant to 28 U.S.C. § 157(b)(2)(I).  Venue is proper in this district under 28 U.S.C. § 1409(a).  This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law under Bankruptcy Rule 7052 and Federal Civil Rule 52.

## III.     Analysis

To except a debtor's debt from discharge under 11 U.S.C. § 523(a)(4) or (a)(6), a plaintiff creditor must prove his claim by a preponderance of the evidence.  *Grogan v Garner*, 498 U.S. 279, 289-91 (1991).  In this case, Plaintiff has not met his burden.

### A. The LLC is not a plaintiff, and Plaintiff Russell Johnson does not have standing to pursue the LLC's claims.

At trial, Plaintiff's counsel suggested that both Russell Johnson and the LLC are plaintiffs in this adversary proceeding.  Although the opening recital in the Complaint [ECF No. 1] states, "Plaintiff-creditor RUSSELL JOHNSON and EARL'S DELI, LLC files this Complaint," (i) the adversary proceeding cover sheet [ECF No. 2] lists only Russell Johnson as plaintiff, (ii) the

Complaint caption lists only Russell Johnson as plaintiff, (iii) the "Parties" section of Plaintiff's Complaint, paragraph 6, says that "Plaintiff is an individual, a member of Earl's Deli, LLC, and a judgment creditor of the Debtor," (iv) the Complaint and other papers filed by Plaintiff were signed by "ATTORNEY FOR PLAINTIFF" (singular), and (v) Plaintiff's Witness and Exhibit List [ECF No. 7], Plaintiff's Proposed Findings of Fact and Conclusions of Law [ECF No. 8], and the Joint Pretrial Order [ECF No. 11] all start with the recital "RUSSELL JOHNSON, Plaintiff" or "RUSSELL JOHNSON ('Plaintiff')."   Finally, although the Complaint alleges injuries to both Plaintiff and the LLC, the Complaint distinguishes between the individual "Plaintiff" (Russell Johnson) and the "LLC," and specifically limits the requested relief to excepting from Defendant's discharge all debt "owed to Plaintiff" (Complaint ¶¶ 16, 19), and concludes with a prayer asking for a judgment that the debt reflected in the state court "Judgment entered in favor of Plaintiff" be declared nondischargeable.

Based on the totality of the papers filed, Defendant did not have fair notice that the LLC was allegedly a plaintiff in this proceeding, and the Court concludes that only Russell Johnson is a plaintiff in this Adversary Proceeding.  *See* Fed. R. Civ. P. 10(a) (complaint caption must include names of all parties).  Plaintiff, even though he owns 51% of the LLC, does not have standing to allege § 523(a)(4) or (a)(6) injuries to the LLC.  *See Overtime Mktg. SE, LLC v. High Performance Beverage*, No. 4:14-CV-434, 2015 WL 430248, at *4 (E.D. Tex. Feb. 2, 2015) (dismissing claims brought by president and owner of Texas LLC against third parties because officer or shareholder does not have standing to sue personally for injuries to the company); *Barrera v. Cherer*, No. 04-13-00612-CV, 2014 WL 1713522, at *2 (Tex. App.—San Antonio Apr. 30, 2014, no pet.) (mem. op.) (plaintiff member of LLC had no standing to assert LLC's causes of action).

Therefore, the Court need not decide any issues of fraud or defalcation with respect to fiduciary duties owed by Defendant to the LLC, embezzlement or larceny of the LLC's property, or willful or malicious injury by Defendant to the LLC or the LLC's property.[2]

**B. Plaintiff did not prove his 11 U.S.C. § 523(a)(4) claim by a preponderance of the evidence.**

Section 523(a)(4) of the Bankruptcy Code excepts from a debtor's discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). The State Court judgement and the evidence admitted in this trial are not sufficient for Plaintiff to prevail on this claim.

**1. The State Court judgement has no preclusive effect in this Adversary Proceeding.**

Plaintiff first argues that because he sued Defendant in state court for breach of fiduciary duty, the State Court's entry of a judgment against Defendant necessarily means there was a breach of fiduciary duty within the meaning of § 523(a)(4). But § 523(a)(4) requires more than a breach of fiduciary duty. A simple breach of the duty of care, for example, does not suffice. The statute requires fraud or defalcation while acting in a fiduciary capacity. The State Court pleadings, judgment, and trial transcript were not offered or admitted into evidence, and (critically) the parties agree that the State Court made no findings of fact or conclusions of law. Therefore, this Court does not have a sufficient record from the State Court to give preclusive effect to the State Court judgment or any necessary findings associated with that judgment. *See Wisely v. Horne (In re Horne),* Adv. No. 10-5063-C, 2011 WL 350473, at *6-7 (Bankr. W.D.

---

[2] Even if the Court were to consider the LLC as a plaintiff in this case under some type of "misnomer" theory—*see Dalton v. State Farm Lloyd's, Inc.*, 4 F. Supp. 3d 859, 865 (S.D. Tex. 2014) (misnomer arises when a party misnames itself or another party, but the correct parties are involved and no one was misled or placed at a disadvantage by the error)—the Court would still enter judgment for Defendant for the reasons detailed in this Memorandum Opinion.

Tex. Feb. 2, 2011) (where evidence before bankruptcy court in a nondischargeability proceeding does not include trial record or detailed findings by fact trier, the only way to give preclusive effect to factual issues decided in trial court is if a particular factual issue necessary to a finding of nondischargeability was also necessary to the state court's ruling).

This Court must, therefore, assess the evidence presented and admitted in this trial to determine whether to except Defendant's debt to Plaintiff from discharge based on fraud or defalcation while acting in a fiduciary capacity.[3]

### 2. The evidence does not show that Defendant committed fraud while acting in a fiduciary capacity.

Fraud in a fiduciary capacity under § 523(a)(4) requires positive fraud involving moral turpitude or intentional wrong. *Bullock v. BankChampaign, N.A.*, 133 S.Ct. 1754, 1759 (2013). In addition, fraud typically requires a false statement or omission. *Id.* at 1760; *cf. In re Ritz*, 787 F.3d 312, 321 (5th Cir. 2015) ("[W]e conclude that a representation is a necessary prerequisite for a showing of 'actual fraud' under Section 523(a)(2)(A).").

First, there is insufficient evidence of moral turpitude or intentional wrong by Defendant. With respect to the complaint that Defendant used the LLC's Wells Fargo credit card to make unauthorized gas purchases, the LLC had no company car, and Earl's Deli required that someone make customer deliveries, bank deposits, and deli-supply shopping trips. So the LLC needed to either purchase a company car (and pay car insurance and maintenance), hire a third-party vendor to perform those tasks, or use the car of an employee or member. The gas purchases were all recorded in the LLC's QuickBooks and totaled $3,405.69, compared to total sales

---

[3] Defendant did not concede that he owed a fiduciary duty to a fellow LLC member (Plaintiff), as opposed to the unquestionable fiduciary duty he owed to the LLC. Because Plaintiff did not prove fraud or defalcation, the Court assumes, without deciding, that Defendant owed a fiduciary duty to Plaintiff. Likewise, even if the LLC were a plaintiff in this Adversary Proceeding, because no fraud or defalcation by Defendant was proven, the LLC would not have prevailed under § 523(a)(4).

during that same period of $180,420.24 and total operating expenses of $215,714.97. Pl.'s Ex. 13 (summary of distributions to Defendant and Defendant's personal use of Wells Fargo credit card); Pl.'s Ex. 9 (LLC spreadsheet reflecting sales and total expenses for second quarter 2007 through fourth quarter 2008, as well as sales and expenses in later periods). Although the gas purchases paid for some of Defendant's personal gas use as well, there is no evidence that the LLC helped Defendant pay a portion of his car insurance or maintenance (the general ledger reflects no such payments), or that the total transaction—Defendant's providing a car and paying all maintenance and insurance in exchange for purchasing gas with the LLC's Wells Fargo credit card—was unfair to the LLC. *See* Company Agreement ¶ 6.03 (providing that the LLC may transact business with any member provided the contract or transaction is fair to the LLC as of the time it is authorized or ratified by the members). Given the totality of the circumstances, the Court finds that the Defendant's gas purchase transactions using the LLC's Wells Fargo credit card did not rise to the level of fraud while acting in a fiduciary capacity to Plaintiff or the LLC.

Similarly, there is insufficient evidence of moral turpitude or intentional wrong concerning the distributions made to Defendant. Defendant caused the LLC to distribute to himself $2,000 for the entire time he managed and operated Earl's Deli. During that time period, Plaintiff chose not to share management or operational responsibilities in accordance with the parties' respective Percentage Interests (as called for by ¶ 6.01 of the Company Agreement), but instead, Plaintiff permitted Defendant to manage the day-to-day operations of Earl's Deli. Management (under ¶ 6.01(j) of the Company Agreement) is allowed to determine distributions of cash to members pursuant to paragraph 5.02 of the Company Agreement. So Plaintiff cannot now complain that Defendant—the management he chose—made the excess-cash determinations under paragraph 5.02 without consulting him. Furthermore, Defendant's excess-cash

determinations[4] appear to have been proper.  Defendant testified, credibly, that he reviewed current and future cash needs of Earl's Deli before making any of the distributions, that no vendors or utilities went unpaid, and that the LLC's landlord did not press for rent for over four years.

The Defendant did not conceal or hide the distributions, as all such distributions were disclosed and recorded in QuickBooks and Plaintiff had access to QuickBooks at all times.  It is true that Defendant made distributions only to himself and not to Plaintiff while Defendant was managing and operating Earl's Deli.  However, Plaintiff allowed similar distributions to be made to Defendant even after Plaintiff took control of the day-to-day management and operation of Earl's Deli.  Plaintiff's explanation—that once he discovered the distributions he told Defendant not to take them, but that he did not want to "wrestle" Defendant and did not know how he could stop him—seems implausible and not credible to the Court given the provisions in the Company Agreement that allow one member to exercise remedies against a defaulting member who has committed fraud or theft or gross negligence.  Pl.'s Ex. 2, Company Agreement ¶¶ 15.04 ("Defaulting Member" includes a member who has willfully violated the agreement or committed fraud, theft, or gross negligence against the LLC or other members), 15.01(h) (describing remedies available against a "Defaulting Member").  Defendant's explanation is more plausible and credible to the Court:  Plaintiff never complained about the fully disclosed distributions until Plaintiff filed suit in state court long after Plaintiff had assumed day-to-day operations of Earl's Deli and after Earl's Deli had closed.  The distributions suggest not moral turpitude or intentional wrong by Defendant, but instead both parties' recognition that Defendant

---

[4] Paragraph 5.02 of the Company Agreement calls for an available-cash determination and not, as Plaintiff suggests, a net-income analysis.

was entitled to some type of return for his sweat equity or that Defendant needed the distributions for living expenses.

The Court is also unable to find moral turpitude or intentional wrong by Defendant with respect to the Regions loan proceeds. The LLC's general ledger reflects a deposit of $25,000 from Regions bank on August 17, 2007, and a withdrawal of $23,500 on August 20, 2007 to "Pay down Line of Credit" with Wells Fargo. Pl.'s Ex. 7. The general ledger specifically identifies only $15,374 owed to Wells Fargo as of the payoff date, thus leading to the $8,126 discrepancy. *See id.* But even though both parties had access to QuickBooks and all of the LLC's other books and records, neither side produced the Wells Fargo line of credit statements, deposit account statements, or check stubs to establish the actual payoff balance for the Wells Fargo line of credit, who actually received the alleged unaccounted for funds, or how such funds were spent or otherwise misappropriated. Defendant testified, credibly, that the only funds he received from the LLC were the fully disclosed gas purchases and distributions, and he admitted receiving those payments unabashedly. The Court cannot find moral turpitude or intentional wrong based on this record.

Second, the Court finds that Defendant made no false statement or omission to support a fraud finding under § 523(a)(4). Plaintiff identifies no affirmative misrepresentation by Defendant and the Court is aware of none. Plaintiff alleges that until he took over the day-to-day management of Earl's Deli, he was not aware that Defendant had been purchasing gas using the LLC's Wells Fargo credit card or that Defendant had caused the LLC to pay $2,000 of distributions to Defendant. However, all such gas purchases and distributions were recorded in QuickBooks, and Plaintiff allowed for over $5,700 of additional distributions to be made to Defendant even after Plaintiff took over the day-to-day management of Earl's Deli. The facts in

the record do not support any type of claim for fraud by nondisclosure. In *Bazan v. Munoz*, 444 S.W.3d 110 (Tex. App.—San Antonio 2014, no pet.), the court affirmed a jury finding of fraud by nondisclosure by two members of an LLC, which owned a restaurant and bar. The members violated the LLC agreement by "secretly" taking salaries and pocketing cover charge money in violation of the LLC agreement without telling the third member, who was not involved in operating the business. The court noted there was evidence that the third member did not have an opportunity to discover the truth of the "secretly taken" funds. *Id.* at 119-20 (noting fraud by nondisclosure requires, among other things, that defendant knew plaintiff was ignorant of material facts, that plaintiff did not have equal opportunity to discover the facts, and that plaintiff was deliberately silent when he had a duty to speak).

This case is distinguishable from *Bazan* for at least three independent reasons. First, Defendant dutifully disclosed and recorded all gas purchases made with the Wells Fargo credit card and all distributions made to him in the LLC's general ledger, using the QuickBooks software that Plaintiff insisted be used. Defendant's actions cannot fairly be characterized as "secretly" taking funds. Second, Plaintiff always had access to the LLC's QuickBooks and other books and records and so he had equal access to the facts. Third, because Plaintiff allowed Defendant to manage the business initially, and because the Company Agreement allowed management to make excess-cash determinations and to conduct transactions with members on fair terms to the LLC, Defendant's actions regarding the gas purchases with the Wells Fargo credit card and the distributions were permissible and seemingly ratified by Plaintiff.

For all of the above reasons, the evidence does not show that Defendant committed fraud while acting in a fiduciary capacity.

### 3. The evidence does not show that Defendant committed a defalcation while acting in a fiduciary capacity.

Defalcation under § 523(a)(4) requires a culpable state of mind involving knowledge of, or gross recklessness with respect to, the improper nature of the fiduciary behavior. *Bullock v. BankChampaign, N.A.*, 133 S.Ct. 1754, 1757 (2013). If actual knowledge of wrongdoing is lacking, the reckless conduct requires a fiduciary who consciously disregards (or is willfully blind to) a substantial and unjustifiable risk that his behavior will result in a violation of fiduciary duty. *Id.* at 1759.

For the reasons already stated, Defendant did not have actual knowledge of any wrongdoing with respect to the gas purchases using the Wells Fargo credit card or the distributions, because there was none, and he was not willfully blind to risks of fiduciary-duty breaches because there were no such breaches. With respect to the potential $8,126 discrepancy in the general ledger between the alleged Wells Fargo loan payoff amount and the amount of Regions loan proceeds used to pay off Wells Fargo, for the reasons outlined above, there is insufficient evidence of Defendant's culpable state of mind or willful blindness to support a finding of defalcation.

### 4. The evidence does not show that Defendant committed embezzlement or larceny.

Embezzlement under § 523(a)(4) is the fraudulent appropriation of property by a person who is entrusted with that property or who has possession of it lawfully. *In re Miller*, 156 F.3d 598, 602 (5th Cir. 1998). There must be proof of the debtor's fraudulent intent in taking the property. *Id.* at 602-03. Larceny is the fraudulent and wrongful taking and carrying away of somebody else's property with the intent to convert it to the taker's use and to deprive the owner

of the property permanently. *Smith v. Hayden (In re Hayden)*, 248 B.R. 519, 526 (Bankr. N.D. Tex. 2000). Other than the manner in which the funds come into possession of a party, larceny does not differ from embezzlement. *Id.*

The only property Defendant allegedly took is the LLC's property, and as noted above, Plaintiff does not have standing to allege injuries to the LLC. But even if the LLC were a plaintiff, or if the property were somehow Plaintiff's, the Court still would not find embezzlement or larceny here because the Court has already found insufficient proof of Defendant's fraudulent intent.

### C. Plaintiff did not prove his 11 U.S.C. § 523(a)(6) claim by a preponderance of the evidence.

Section 523(a)(6) of the Bankruptcy Code excepts from a debtor's discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). This provision requires "a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). The Fifth Circuit clarified the *Kawaauhau* standard and held that an injury is "willful and malicious" when there is either an objective substantial certainty of harm or a subjective motive to cause harm. *In re Miller*, 156 F.3d at 606.

Again, to the extent Plaintiff complains about injury to the LLC or to the LLC's property, Plaintiff has no standing to pursue the LLC's claims. Even if Plaintiff had such standing, or even if the LLC were a plaintiff, the Court's findings would match the following findings with respect to alleged injuries to Plaintiff: The gas purchases using the Wells Fargo credit card and the distributions were permissible, and in any event Defendant had no subjective intent to cause harm and there was no objective substantial certainty of harm. Defendant simply was doing his best to help the LLC succeed and scratch out a living, all with Plaintiff's tacit approval. With

respect to the Wells Fargo line of credit-payoff proceeds, the Court has only Defendant's credible testimony that he didn't take the funds. Plaintiff did not come forward with sufficient evidence—such as a Wells Fargo line of credit statement, depository account statement, and check stubs—to establish that funds were even missing, let alone misappropriated, by Defendant. There is insufficient evidence in the record to establish either subjective motive to cause harm or objective substantial certainty of harm. For these reasons, Plaintiff's § 523(a)(6) claim fails.

### IV.    Conclusion

The Plaintiff's § 523(a)(4) claim fails because Plaintiff did not prove by a preponderance of the evidence that Defendant committed a fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. Plaintiff's § 523(a)(6) claim also fails because he did not prove by a preponderance of the evidence that Defendant willfully and maliciously injured another entity or the property of another entity. The Court will enter a separate final judgment for Defendant.

### END OF MEMORANDUM OPINION ###